IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| LLOYD A. KIRK, | ) | |
|---|---|---|
| Plaintiff, | ) | 4:18CV3125 |
| v. | ) | |
| | ) | **MEMORANDUM** |
| STATE FARM FIRE & CASUALTY COMPANY, | ) | **AND ORDER** |
| Defendant. | ) | |

This is a diversity action that has been removed to this court from the District Court of Hitchcock County, Nebraska. Plaintiff Lloyd Kirk sues his insurer, State Farm Fire & Casualty Company ("State Farm"), for breach of contract and bad faith due to State Farm's refusal to pay Kirk's demand for the policy limits of his underinsured motorist coverage. State Farm has filed a Motion for Partial Summary Judgment on Kirk's Bad Faith Claim (Filing 22). For the reasons that follow, State Farm's Motion will be granted.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for the motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks and citation omitted). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation

marks and citation omitted).

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (internal quotation marks and citations omitted). But "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citations omitted).

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (internal quotation marks and citation omitted).

## II. UNDISPUTED MATERIAL FACTS

The court finds that the following material facts, as stated in State Farm's brief, are fully supported by the evidence cited and have not been properly controverted by Kirk. Consequently, they are deemed admitted for purposes of summary judgment. *See* NECivR 56.1(b)(1); Fed. R. Civ. P. 56(e)(2)[1]; *see also Roe v. St. Louis Univ.*, 746

---

[1]The court's local rules require the party moving for summary judgment to file a brief containing a "separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." This statement of facts "should consist of short numbered paragraphs, each containing pinpoint references to . . . materials that

F.3d 874, 881 (8th Cir. 2014) ("[i]f no objections have been raised in the manner required by the local rules, a district court will not abuse its discretion by admitting the movant's facts").

    1.    On January 23, 2017, Plaintiff was involved in a car accident on South Dakota Highway 44 in Charles, Mix County, South Dakota.[2]

    2.    The accident occurred when a vehicle driven by Margaret Haines crossed the center line of the highway and struck Plaintiff's vehicle head-on.

    3.    Plaintiff was taken by ambulance to a nearby emergency room, evaluated, and then transferred to the hospital in Mitchell, South Dakota, where Plaintiff was treated for a lacerated toe, four cracked ribs, and a cracked sternum. At that time, Plaintiff's chief complaints were chest pain, toe pain, and bladder issues.

    4.    Plaintiff was hospitalized for approximately one week, and then he was transferred to a nursing home for two weeks, where he did physical therapy sessions twice per day.

    5.    Plaintiff then went to an orthopedic doctor complaining of pain in his knees. Plaintiff ultimately had knee replacement surgery on

---

support the material facts . . . ." NECivR 56.1(a) (emphasis in original). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "state the number of the paragraph in the movant's statement of material facts that is disputed" and must contain pinpoint citations to evidence supporting the opposition. *Id*. "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (emphasis removed).

[2]Citations to the record have been removed for ease of reading. Such citations may be found in Filing 23, at CM/ECF pp. 3-7.

his left knee.

6. Plaintiff's chest pain from his sternum and rib injuries was resolved within four or five months after the accident.

7. Plaintiff had been involved in a prior car accident with a semi-truck in May, 2016, in which Plaintiff broke his neck. Plaintiff had fusion surgery for his neck, after which he wore a stiff neck brace and used a walker for six months. Plaintiff then had a second neck surgery in October, 2016 to address a pinched nerve. Plaintiff's neck brace had been removed four days prior to the subject Accident.

8. In August, 2017—approximately seven months after the Accident—Plaintiff tripped and fell, striking the back of his head. Plaintiff then began having neck pain. Plaintiff subsequently had a third neck surgery.

9. Margaret Haines had an automobile liability insurance policy with Progressive Casualty Insurance Company, with liability limits of $100,000.00. Plaintiff settled his claims against Haines for the limits of the Progressive policy.

10. Plaintiff had his own automobile insurance policy with State Farm, with $5,000.00 in medical payments coverage and $100,000.00 in UIM coverage.

11. After settling with Progressive, Plaintiff demanded the $100,000.00 limits of his UIM coverage with State Farm.

12. Plaintiff personally has not had any dealings with State Farm as a result of this accident, as Plaintiff's attorney has handled everything related to the claim.

13. State Farm evaluated Plaintiff's medical records in the

course of processing his claim for underinsured motorist benefits.[3]

14. Records received by State Farm during its claim investigation show that in addition to the treatment described above, Plaintiff received the following medical treatment after the Accident:

    a. A Radiology Report dated January 23, 2017 states that a CT study of Plaintiff's cervical spine was "[n]egative…for []acute bony or ligamentous injury," that the C5-C6 fusion and old C5 fracture were "stable" and that moderate disc degenerative changes were noted.

    b. The Emergency Room notes dated January 24, 2017 from Avera Queen of Peace Hospital state, "Three months ago, he had a cervical fusion in his lower neck, but that does not seem to be hurting any more other than the mild achiness that he has from it normally."

    c. On January 26, 2017, Plaintiff's left knee was evaluated by Dr. Christopher Krouse. The record provided that Plaintiff was "still having left knee pain with moderate osteoarthritis," and that the CT scan and plain film x-rays "were essentially negative for

---

[3]Kirk claims he lacks the knowledge to dispute or agree with State Farm's proposed fact (which is supported by evidence) that it evaluated Kirk's medical records in the course of processing his claim. Kirk offers no evidence to contradict this fact, instead only inferring that State Farm must not have looked at Kirk's medical records based on its $5,000.00 initial valuation of Kirk's claim. (Filing 30 at CM/ECF p. 4.) This is insufficient to properly dispute State Farm's proposed fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) ("The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." (internal quotation marks and citation omitted)).

5

any acute changes, but had moderate-to-severe degenerative osteoarthritis."

d. Plaintiff was discharged from the hospital on January 27, 2017, and the discharge summary further provides that the CT scan of Plaintiff's left knee "showed a small joint effusion and a Baker's cyst, but no other acute traumatic injuries." Plaintiff was recommended a walking shoe and antibiotic therapy. The discharge summary does not reference any neck-related diagnoses.

e. Plaintiff followed up with Dr. Krouse on March 13, 2017. The record relates that Plaintiff's "severe bone-on-bone" existed prior to the accident, and that while the accident "aggravated it," "overall this is osteoarthritis." Plaintiff elected to undergo a left knee replacement on April 11, 2017.

f. Plaintiff presented to Dr. Carl Bechtold at Sanford USD Medical Center in September, 2017 for a second opinion on his total left knee pain. The record relates that Plaintiff had progressed well with physical therapy after his left knee replacement. The record also acknowledges "x-rays showing advanced arthritis from before his surgery." Plaintiff underwent an MRI of his left knee, from which the orthopedic concluded there was no torn tendon or Baker's cyst in the back of Plaintiff's knee.

g. In December, 2017, Plaintiff reported to Dr. Bechtold for chronic right knee pain. Plaintiff reported that his right knee had "been bothering him for at least 3 years." He was assessed with having osteoarthritis in his knee, and he elected to undergo a cortisone injection.

h. Also in December, 2017, Plaintiff reported to Sanford USD Medical Center that "he had a fall a couple of months ago and continues to have neck pain." The record relates that Plaintiff first had a cervical fusion performed in May, 2016, with a second

procedure performed a few months later. Further, the record states, "His neck pain returned after his fall in August. He had a MRI done in October. He went back to see his doctor in Colorado and was told the fusion had broke [sic] and this would need to be repaired."

I.     Plaintiff's Colorado doctor was Dr. Hans C. Coester from the Medical Center of the Rockies. On February 10, 2018, Dr. Coester performed a posterior cervical fusion surgery on Plaintiff for "pseudoarthrosis at C6-7," noting that Plaintiff "has a history of previous anterior cervical fusion with resolution of symptoms and then worsening pain in the same pattern after that."

15.    Records obtained by State Farm pursuant to subpoena show that Plaintiff had the following medical history before the accident:

a.    On March 10, 2016, Plaintiff presented to Great Plains Orthopaedics, reporting chronic bilateral knee pain that Plaintiff attributed to arthritis. X-rays of both knees revealed "[r]ather significant bone on bone medial compartment medial osteoarthritis." Plaintiff was advised that "his knees are too arthritic to be a candidate for anything completed through a scope. We talked about the fact that at some point in the future he may end up requiring knee replacement." Plaintiff received bilateral cortisone injections.

b.    Plaintiff followed up with Great Plains Orthopaedics on March 28, 2016. The cortisone shots in his knees had given him mild relief. Plaintiff "knows that he has rather advanced knee osteoarthritis, but still would like to hold off on knee replacement surgery." Plaintiff elected to try a different shot for his knees.

c.    In the exam conducted by the emergency room after Plaintiff's May 6, 2016 motor vehicle accident in which Plaintiff sustained a fracture to his cervical spine, Plaintiff reported having some chronic right knee pain but indicated it was no worse than his pre-accident knee pain.

7

16. Plaintiff is claiming approximately $121,829.85 in past medical expenses. Of this amount, Plaintiff's left knee replacement cost $34,813.73, and Plaintiff's February, 2018 cervical fusion surgery cost $53,346.01.

17. Ultimately, State Farm paid the $5,000.00 limits of Plaintiff's Medical Payments Coverage, for various medical services provided to Plaintiff after the Accident. State Farm first offered $5,000.00 in UIM benefits, and then increased its offer to $10,000.00, which Plaintiff denied.

(Filing 23 at CM/ECF pp. 3-7.)

In addition to the above undisputed facts, Kirk has proposed the following additional facts. After review of State Farm's responses to each of Kirk's proposed facts, I find the following additional facts to be undisputed and capable of being presented at trial in admissible form.[4]

    a. Patient arrived at the Platte Health Center ER by ambulance after being involved in a head-on collision with Ms. Haines which resulted in her death. It was reported to the ER attendee, Kara Konken, RN, that Mr. Kirk was a restrained driver at the time of the accident and that he complained of "che[st] pain, right knee

---

[4] On summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes to 2010 Amendment, Subdivision(c)(2). "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in original; holding district court did not abuse its discretion in overruling hearsay objection).

and foot pain" and "neck pain".[5]

b.  The "Emergency Room Visit Notes" completed on January 23, 2017 at Platte Health Center further note:

I.  "Neck: [L]imitation of mo[tion]"[6];
ii.  "[R]ight great toe with near circumferential laceration around base";
iii.  "IV fentanyl for pain";
iv.  "Rapid decision made to transfer due to possible neck injury/possible pulmonary contusion or worsening breathing. Injuries seemed non[]life threatening but clearly he needed a trauma center and to be near surgeon."

c.  Mr. Kirk was thereafter transferred to Mi[tchell] ER and was admitted to the hospital for a number of reasons including "pain control" and "orthopedic consultation for foot fracture and observation of any worsening of clinical status related to additional trauma injury." It is also important to note that Mr. Kirk received multiple doses of 50 mcg of fentanyl in route to Mi[tchell] ER.

d.  Prior to the January 23, 2017 collision, Plaintiff underwent an anterior cervical discectomy and fusion in May of 2016. He then had good relief from his pain but after a while began to develop pain again and he underwent an MRI scan that showed a C7 disc herniation and underwent another neck surgery. Both of these surgeries were completed at UC Health and his records show that the second surgery was successful and that he was doing well "until he was in an auto accident and then his pain recurred and now he has [had] studies that showed he has [got] a failed fusion

---

[5]Again, citations to the record have been omitted for ease of reading. These citations may be viewed in Filing 30 at CM/ECF pp. 4-5.

[6]Bracketed material indicates corrections that have been made to accurately quote the medical record.

9

at the C6-7 level" and it was recommended that he undergo another surgery.

e. Plaintiff had an MRI completed of his lumbar spine on January 13, 2017, ten days before the head[-]on collision with Ms. Haines, and another MRI of his spine completed on October 3, 2017, approximately eight months after the collision and approximately two months after an apparent fall onto his bed in his home in August.

I. No MRI was completed after the head-on collision, and prior to Mr. Kirk's fall onto his bed in August of 2017.

15. In August of 2017 Mr. Kirk fell backwards onto his bed and jerked his neck.

16. Defendant was made aware of Mr. Kirk's preexisting knee and spinal conditions in the initial demand made by Plaintiff.

17. The Defendant did not receive any information regarding the alleged fall onto the bed until well after Plaintiff's initial demand and evidence was provided to Defendant in that regard by Plaintiff. . . .

(Filing 30 at CM/ECF pp. 4-5.)

## III. DISCUSSION

Nebraska recognizes a first-party bad-faith cause of action for an insurer's refusal to settle a claim with an insured policyholder who suffers a direct loss. *LeRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 47 (Neb. 2005). In order to establish such a claim, "a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id*. at 47-48. If a lawful basis for denying the claim actually existed, "'the insurer, as a matter of law, cannot be held

liable in an action based on the tort of bad faith.'" *Id*. at 49 (quoting *Radecki v. Mutual of Omaha Ins. Co.*, 583 N.W.2d 320, 325 (Neb. 1998)).

In considering such a bad-faith claim, the court "must first determine whether, at the time of each denial, [the insurer] had an arguable basis on which to deny the claim." *Radecki*, 583 N.W.2d at 326. Where there is an "arguable basis" to deny a claim for insurance benefits, a "bad faith cause of action fails as a matter of law regardless of the manner in which an investigation was or was not conducted." *LeRette*, 705 N.W.2d at 50-51.

Here, Kirk made demands for payment of $100,000 under his State Farm underinsured motorist bodily injury coverage sometime before May 29, 2018, (Filing 25-4) and again on July 3, 2018 (Filing 25-5). State Farm responded to Kirk's counsel on July 13, 2018, that "[i]t does not appear that any of the cervical issues are related to this accident" based on ER records that showed Kirk complained of chest-wall, right-knee, and foot pain, but "denie[d] any neck or back pain," and that "[t]he first indication of any cervical concerns was on September 7, 2017 at Sanford Medical Center." (Filing 25-6.) In the letter, State Farm offered Kirk $10,000.00 to settle his claim. (*Id*.) Kirk rejected that offer on July 17, 2018. (Filing 25-7.) State Farm asserts that it denied Kirk's claim for the policy limits due to "expenses relating to his left knee replacement surgery and February, 2018[,] cervical fusion surgery." (Filing 23 at CM/ECF p. 9.)

### A. Kirk's Knee Replacement

State Farm knew at the time it denied Kirk's claim for benefits that an orthopedic surgeon informed Kirk in March 2016—well before the accident—that because of "[r]ather significant bone on bone medial compartment medial osteoarthritis" and chronic bilateral knee pain, Kirk may need knee-replacement surgery in the future, but Kirk decided to "hold off" having surgery in favor of

11

injections for pain. State Farm also knew that a CT scan and x-rays taken three days after the January 2017 accident "showed a small joint effusion and a Baker's cyst, but no other acute traumatic injuries" and "were essentially negative for any acute changes, but had moderate-to-severe degenerative osteoarthritis." The medical record from Kirk's follow-up with Dr. Krouse in March 2017 stated that Kirk's "severe bone-on-bone" osteoarthritis existed prior to the accident, and that while the accident "aggravated it," "overall this is osteoarthritis."

State Farm was also aware that Kirk underwent a left-knee replacement on April 11, 2017, and that Kirk's physician attributed the knee replacement to Kirk's osteoarthritis. Finally, State Farm knew that a September 2017 record from Dr. Carl Bechtold at Sanford USD Medical Center indicated that Kirk had progressed well with physical therapy after his knee surgery and that "x-rays show[ed] advanced arthritis from before his surgery."

State Farm's knowledge of Kirk's pre-accident diagnosis of significant osteoarthritis, bilateral knee pain, and anticipated knee replacements, as well as imaging taken just after the accident showing osteoarthritis, but no acute traumatic injuries, provided State Farm with a reasonable basis for denying Kirk the benefits of his underinsured insurance policy to cover his knee-replacement surgery. Therefore, State Farm cannot be held liable on Kirk's bad-faith claim. *Williams v. Allstate Indem. Co.*, 266 Neb. 794, 799, 669 N.W.2d 455, 460 (2003) ("[A]n insurance company has a right to debate a claim that is 'fairly debatable,' or subject to a reasonable dispute, without being subject to a bad faith claim.").

### B. Kirk's 2018 Cervical Fusion Surgery

At the time State Farm denied Kirk's claim, it knew that after a May 6, 2016, car accident in which Kirk fractured his cervical spine, he underwent an anterior cervical discectomy and fusion that same month. After he began to develop pain

again, he underwent an MRI scan that showed a C7 disc herniation, resulting in another neck surgery a few months later. State Farm also knew that a CT study of Kirk's cervical spine from the day of the January 23, 2017, accident was "[n]egative . . . for []acute bony or ligamentous injury" and noted that the C5-C6 fusion and old C5 fracture were "stable." The ER record from the date of the accident noted Kirk's prior cervical fusion, but stated, "that does not seem to be hurting any more other than the mild achiness that he has from it normally."

State Farm was also aware of a December 2017 report from Sanford USD Medical Center noting that following Kirk's two 2016 neck surgeries, "His neck pain returned after his fall in August. He had a MRI done in October. He went back to see his doctor in Colorado and was told the fusion had broke [sic] and this would need to be repaired." On February 10, 2018, Kirk's Colorado doctor performed a posterior cervical fusion surgery on Kirk for "pseudoarthrosis at C6-7," noting that Kirk had "a history of previous anterior cervical fusion with resolution of symptoms and then worsening pain in the same pattern after that."

At the time it denied Kirk's claim for benefits, State Farm was aware of Kirk's two neck surgeries pre-dating the January 2017 car accident; imaging immediately following the January 2017 accident that showed no acute injury and that Kirk's prior C5-C6 fusion and C5 fracture were "stable"; and evidence that Kirk developed neck pain again after an August 2017 fall, resulting in the February 2018 cervical fusion surgery.

With this knowledge, it was reasonable for State Farm to question whether the January 2017 accident actually caused Kirk's February 2018 surgery and to deny Kirk's claim for benefits to cover the costs of that surgery. Because State Farm had an arguable basis for denying Kirk's claim based on the medical information before it, Kirk's bad-faith claim fails as a matter of law. Further, there is no merit to Kirk's argument that State Farm did not "properly investigate[]" his claim and that the

investigation was "a farce" (Filing 30 at CM/ECF p. 9) because where there is an "arguable basis" to deny a claim for insurance benefits, a "bad faith cause of action fails as a matter law regardless of the manner in which an investigation was or was not conducted." *LeRette*, 705 N.W.2d at 50-51. Accordingly,

IT IS ORDERED:

1. Defendant's Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claim (Filing 22) is granted; and

2. Final judgment will be withheld pending resolution of Plaintiff's breach-of-contract claim.

DATED this 25th day of November, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge